UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAVID GAWF,<br><br>        Plaintiff,<br><br>    v.<br><br>SHERIFF'S DEPUTY JASON LEIST, in his official and individual capacity; SHERIFF'S DEPUTY THOMAS KEYLON, in his official and individual capacity; SHERIFF'S DEPUTY HERBERT (aka KIP) BOWEN, in his official and individual capacity; SAN BENITO COUNTY SHERIFF DEPARTMENT, in its official and municipal capacity; COUNTY OF SAN BENITO, in its corporate and municipal capacity; and DOES 1-25,<br><br>        Defendants. | Case No. 5:12-cv-00220 HRL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>[Re: Dkt. 89] |

      Pro se plaintiff David Gawf sues for alleged violation of his civil rights stemming from his 2010 arrest for domestic violence. Pursuant to Fed. R. Civ. P. 12(b)(6), defendants move to dismiss plaintiff's Third Amended Complaint (TAC).[1] Alternatively, they move for a more definite statement under Fed. R. Civ. P. 12(e). Upon consideration of the moving and responding

---

[1] The TAC is actually plaintiff's second amended pleading because, as discussed more fully below, he was not allowed to file his proposed second amended complaint. To avoid confusion, however, the court will refer to plaintiff's current complaint as his Third Amended Complaint or "TAC."

papers, as well as the arguments presented at the motion hearing, the court grants in part and denies in part the motion to dismiss and denies the alternate request for a more definite statement.[2]

## BACKGROUND

The following background facts are drawn from the allegations of the TAC which, solely for purposes of resolving the instant motion, are assumed to be true:

On the night of December 16, 2010, Gawf, his girlfriend (Christine Morikawa), and a friend (Daniel Jeske) visited a restaurant in San Jose to watch a football game. Because Gawf and Morikawa had both been drinking, Jeske drove plaintiff's car on the way home.

At some point, Gawf and Morikawa began fighting in the car. In his TAC, plaintiff now says that he immediately fell asleep in the backseat of the car and that Morikawa lunged at him from the front seat and began attacking him for no reason. He asked Jeske to pull over so that he could get out. Jeske pulled over alongside Highway 101. Gawf exited the vehicle and ran into the bushes.

Meanwhile, defendant Leist pulled up to the car to find out what happened. Gawf then emerged from the bushes with his hands in the air. Leist handcuffed him, told him he was being detained, and placed him in the back of the police car. At some point during this encounter, defendants Keylon and Bowen pulled up behind Leist.

Morikawa initially told Leist that she could not remember what happened. Nevertheless, she later stated that she and Gawf got into an argument and "hit each other" when plaintiff thought that she stole his wallet. (TAC, Ex. 14 (Morikawa Statement)). Additionally, she said that Gawf started kicking the back of her seat as she tried to calm him down; that Gawf "attacked [her] from the backseat," and she then "hit him and [Gawf] immediately wanted out of the car." (Id.). The TAC alleges that Morikawa was extremely drunk and that her memory was impaired. When Leist asked for his side of the story, Gawf replied, "I plead the Fifth." (TAC ¶ 18). Leist then allegedly slammed the police car door and said, "He's not cooperating, tow the car." (Id.).

---

[2] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

2

The TAC goes on to allege that Jeske asked if he could take the car to drive himself and Morikawa home. Defendants reportedly said that they asked Gawf if Jeske could take the car home, but Gawf said no. Plaintiff claims that he was never actually asked if Jeske could take his car home and that defendant Bowen arranged for the tow, even though Jeske was sober and no one was cited for any traffic violations.

Meanwhile, defendant Keylon reportedly drove Jeske and Morikawa to a gas station. But, when the station owner refused to have them dropped off there, Keylon drove them to another gas station (allegedly far from home) and then left.

Gawf was taken to the San Benito County Jail and booked for felony domestic violence under California Penal Code § 273.5(a). He was released twelve hours later when his father posted bail. The County District Attorney later brought charges for assault and battery and for being drunk in public. The case eventually was dismissed before trial.

In a statement appended to the TAC, Morikawa now says that she sustained no injuries whatsoever on the night in question. (TAC, Ex. 10). And, Gawf claims that the marks on Morikawa's face in photos taken at the scene are not injuries, but merely smeared mascara. The TAC alleges that Gawf, on the other hand, had visible scratches on his face and neck, a split upper lip, as well as defensive wounds on his hands.

Leist's incident report, which is appended to the TAC, notes that Morikawa said she hit plaintiff and that Jeske stated that, because he was driving, he did not see anything when asked if he saw Gawf hit Morikawa. Plaintiff further asserts that the report does not say that Morikawa sustained any injuries, but notes that plaintiff had blood and scratches on his face and neck area. The TAC goes on to allege that, after plaintiff lodged a complaint with the San Benito County Sheriff's Department, the County's own investigator concluded that Leist's report lacked sufficient detail to support an arrest for domestic violence.

Gawf filed this lawsuit under 42 U.S.C. § 1983, seeking redress for the alleged violation of his federal constitutional rights. He also asserts a number of state law claims for relief. In sum, he contends that he never should have been arrested in the first place; and, if defendants were going to arrest anyone for domestic violence, Gawf says it should have been Morikawa.

Defendants moved to dismiss the original complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Gawf failed to state a claim upon which relief could be granted. That motion was mooted by Gawf's First Amended Complaint (FAC) filed pursuant to Fed. R. Civ. P. 15(a)(1)(B).

The court subsequently granted defendants' motion to dismiss the FAC with leave to amend as to some claims. The court dismissed plaintiff's Fourth Amendment claim with leave to amend. His Eighth Amendment claim was dismissed, albeit plaintiff was given an opportunity to amend to state a claim under the Fourteenth Amendment (Due Process). Gawf's Fifth, Ninth, Thirteenth, and Fourteenth Amendment (Equal Protection) claims were dismissed without leave to amend. The court declined to exercise supplemental jurisdiction over plaintiff's state law claims unless and until he is able to state a viable federal claim for relief; and, those state claims were dismissed without prejudice. Because all of the FAC's claims were dismissed, the court found it unnecessary to address defendants' arguments that they are entitled to qualified immunity.

Before the court issued its order on defendant's motion to dismiss the FAC, plaintiff submitted a proposed Second Amended Complaint (SAC) that he requested leave to file. That request was denied because the SAC was premature and deficient in a number of respects. Plaintiff then filed the currently operative pleading, which he titled his Third Amended Complaint.

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants move to dismiss the TAC, arguing that the amended pleading still fails to state a claim for relief and that they are, in any event, entitled to immunity under federal and state law. Alternatively, defendants request a more definite statement under Fed. R. Civ. P. 12(e). For the reasons stated below, the court grants in part and denies in part the motion to dismiss and denies defendants' motion for a more definite statement.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. Id.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted) However, only plausible claims for relief will survive a motion to dismiss. Iqbal, 129 S.Ct. at 1950. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. Id. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion.[3] Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a claim without leave to amend if amendment would be futile. Rivera v. BAC Home Loans Servicing, L.P., 756 F. Supp.2d 1193, 1997 (N.D. Cal. 2010) (citing Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996)).

---

[3] Defendants' request for judicial notice is granted. Fed. R. Evid. 201.

5

## DISCUSSION

**A. Federal Claims for Relief**

    **1. Fourth Amendment (False Arrest/Detention)**

The Fourth Amendment permits warrantless arrests upon a showing of probable cause. "Probable cause does not require proof beyond a reasonable doubt of every element of a crime." U.S. v. Noster, 590 F.3d 624, 629 (9th Cir. 2009). "Rather, probable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime." Id. at 629-30.

Under California law, a peace officer may arrest a suspect for domestic violence without a warrant where the officer (1) "has probable cause to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed" and (2) "makes the arrest as soon as probable cause arises to believe that the person to be arrested has committed the assault or battery, whether or not it has in fact been committed." Cal. Penal Code § 836(d)(1)-(2). Although California law does not prohibit dual arrests for domestic violence, it discourages them, when appropriate, by requiring peace officers to "make reasonable efforts to identify the dominant aggressor in any incident. The dominant aggressor is the person determined to be the most significant, rather than the first, aggressor." Cal. Penal. Code § 13701(b). "In identifying the dominant aggressor, an officer shall consider the intent of the law to protect victims of domestic violence from continuing abuse, the threats creating fear of physical injury, the history of domestic violence between the persons involved, and whether either person acted in self-defense." Id.

California Penal Code § 273.5(a) makes it a felony to willfully inflict upon a domestic relation "corporal injury resulting in a traumatic condition." The statute defines "traumatic condition" as "a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force." Id. § 273.5(d). Thus, it appears that the statute requires physical force plus some kind of physical injury.

Here, the TAC alleges that Morikawa was uninjured; plaintiff was the only one who

6

sustained any physical injuries; when asked if he saw Gawf hit Morikawa, Jeske told Leist that he did not see anything because he was driving; plaintiff's car was towed and impounded, even though no one was cited for any traffic violations; and, although defendants believed Morikawa was the victim of domestic violence, she was not offered or given medical treatment, but was instead left at a gas station. Defendants contend that the TAC's allegations are contradictory in that Gawf now claims that he immediately fell asleep in the backseat of the car, whereas Morikawa told Leist that plaintiff attacked her from the backseat. These allegations are contradictory, but not in a way that is fatal to plaintiff's claims for purposes of resolving this motion. They merely exemplify the contradictory nature of Morikawa's and Gawf's account of events. Construing the allegations in the light most favorable to plaintiff, the TAC alleges sufficient facts to state a claim for false arrest/detention.

**2. Fourteenth Amendment (Due Process)**

Review of the TAC reveals that plaintiff's Fourteenth Amendment due process claim is derivative of, if not identical to, his Fourth Amendment claim for false arrest. There is no substantive right under the Fourteenth Amendment's due process clause to be free from arrest and prosecution without probable cause. Albright v. Oliver, 510 U.S. 266, 274-75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The court has already addressed his Fourth Amendment false arrest claim. Because plaintiff's Fourteenth Amendment due process claim appears to be entirely duplicative, it is dismissed without leave to amend.

**3. Fourteenth Amendment (Equal Protection)**

In his prior pleading, plaintiff alleged that he was denied equal protection under the Fourteenth Amendment based on his gender. He said that defendants discriminated against him by taking a statement from Morikawa, but failing to take any statement from him. However, plaintiff himself alleged that defendants did try to get a statement from him, but he refused to respond and instead chose to assert his Fifth Amendment rights. Accordingly, his Fourteenth Amendment equal protection claim was dismissed without leave to amend.

In apparent disregard of that order, plaintiff seeks to resurrect a Fourteenth Amendment equal protection claim based on alleged gender discrimination. "To state a claim for violation of

7

the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class." Serrano v. Francis, 345 F.3d 1071, 1082 (9thCir. 2003). In essence, Gawf says that, although he and Morikawa were equally intoxicated, Leist discriminated against him by taking Morikawa's statement, but choosing not to take a statement from plaintiff because of his intoxication. But again, the TAC alleges that Leist did try to get plaintiff's side of the story, but Gawf responded, "I plead the Fifth." (TAC ¶ 18). Moreover, read in context, Leist's report indicates that he did not take a statement from plaintiff at the County jail because plaintiff stated that he would not remember what he said due to his intoxication level. (TAC, Ex. 5). Even liberally construing the TAC, the allegations are insufficient to show that defendants acted with discriminatory animus based on plaintiff's gender. This claim is dismissed without leave to amend.[4]

### 4. Failure to Train

Although titled "Negligence in Hiring and Training," the TAC's allegations indicate that plaintiff actually is asserting municipal liability under 42 U.S.C. § 1983 for failure to train. Inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989). "Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury." Id. at 391. It is not sufficient merely to "prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct." Id. Rather, Gawf must show that the deficiency in training actually caused the officers' alleged indifference to his constitutional rights. Id. "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 389.

Gawf alleges that defendants were inadequately trained with respect to compliance with

---

[4] Plaintiff is warned that he may be sanctioned for any future failure to abide by the court's orders.

8

the County's domestic violence policies, with California Penal Code § 13701 requiring officers to make a reasonable effort to identify the dominant aggressor in domestic violence incidents, and in report-writing. And, Gawf claims that the County has "no specific policy on taking a statement from a drunk witness," thus leaving the defendant deputies to make up one on their own. (TAC ¶ 129). Whether or not plaintiff will actually be able to prove his claims remains to be seen. But, liberally construing the TAC's allegations and viewing them in a light favorable to plaintiff, the court concludes that he has alleged sufficient facts, at least for pleading purposes. Defendants' motion to dismiss this claim is denied.

### 5. 42 U.S.C. § 1983

Defendants argue that plaintiff's § 1983 claim must be dismissed because he fails to sufficiently allege that any constitutional violation occurred. For the reasons discussed above, the court finds that he has alleged sufficient facts to support a claim for false arrest and failure to train. Accordingly, defendants' motion to dismiss this claim is denied.

### 6. Conspiracy (42 U.S.C. § 1985)

Section 1985 prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). To establish a conspiracy claim, a plaintiff must allege "which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of [the plaintiff's] constitutional rights." Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997). In essence, the TAC alleges that no one objected to the handling of the situation as events unfolded on the night in question. Defendant Keylon reportedly supervised the scene. Plaintiff says no one objected to Leist's incident report, which allegedly excluded evidence as to Morikawa's lack of injury. The TAC says that Leist ordered Bowen to tow plaintiff's car, and Bowen did it. Even accepting the TAC's allegations as true, and viewing them in a light favorable to plaintiff, they are insufficient to allege a conspiracy. At most, the TAC alleges that each defendant took some part in the events in question. Plaintiff has not alleged sufficiently specific facts as to a specific agreement between defendants, the scope of the conspiracy, each defendant's role, and how the conspiracy operated. See Lacey v. Maricopa, 693 F.3d 896, 937 (9th Cir.2012) (finding the conspiracy allegations

1  insufficient when plaintiff did not plead the scope of the conspiracy, what role the defendant had, or when and how the conspiracy operated). This claim is dismissed without leave to amend.

### 7. Qualified Immunity

Defendants assert that even if Gawf suffered constitutional violations based on his false arrest/detention claim, they are entitled to qualified immunity. Although qualified immunity may be raised as a defense in Fed. R. Civ. P. 12(b)(6) motion, under the legal standard governing the instant motion and at this procedural stage of the proceedings, the court must deem plaintiff's allegations to be true. As discussed above, the TAC sufficiently alleges a violation of Gawf's Fourth Amendment right to be free from arrest without probable cause. That is a clearly established right, and the court therefore declines to grant defendants' motion on the grounds of qualified immunity. This ruling is, however, without prejudice to defendants to raise the matter again at summary judgment.

## B. State Law Claims

Gawf asserts state law tort claims for alleged intentional infliction of emotional distress and malicious abuse of the criminal process, as well as a claim for violation of the California Public Records Act (Cal. Gov't Code § 6250, et seq.). Defendants contend that plaintiff's tort claims are barred by various state law immunities and that the TAC fails to state a claim for relief in any event.

### 1. Intentional Infliction of Emotional Distress and Malicious Abuse of Process

#### a. San Benito County

California Government Code § 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The statute's principal function is to provide relief from malicious prosecution. Warren v. Marcus, ---F. Supp.3d---, No. C13-04464DMR, 2015 WL 395219 at *13 (N.D. Cal., Jan. 29, 2015) (citing Blankenhorn v. City of Orange, 485 F.3d 463, 487-88 (9th Cir. 2007)). "The statute also extends to actions taken in preparation for formal proceedings, including actions incidental to the investigation of crimes." Id. (internal quotations and citations omitted). However, the statute

10

"provides no immunity from liability for false arrest or false imprisonment." Gillan v. City of San Marino, 147 Cal. App.4th 1033, 1048 (2007).

Because the court concludes that the TAC sufficiently alleges a claim for false arrest, the County is not immune from plaintiff's emotional distress claim insofar as that claim is based on the alleged false arrest. The motion to dismiss that claim is denied. The County is, however, immune from plaintiff's claim for malicious abuse of process, and the County's motion to dismiss that claim is granted without leave to amend.

### b. Individual Defendants

The individual defendants contend that they are immune from plaintiff's claims for intentional infliction of emotional distress and malicious abuse of process under California Government Code § 820.2, § 820.4, and § 821.6.

California Government Code § 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." The Ninth Circuit, however, has held that "[a]s a matter of law, section 820.2 immunity does not apply to an officer's decision to detain or arrest a suspect." Liberal v. Estrada, 632 F.3d 1064, 1084 (9th Cir. 2011) (citing Gillan v. City of San Marino, 147 Cal.App.4th 1033, 55 Cal.Rptr.3d 158, 174 (2007)).

California Government Code § 820.4 provides: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." The individual defendants argue that they are protected from suit under this statute because their actions were objectively reasonable. They are certainly entitled to maintain that defense as to plaintiff's claims. As discussed above, however, the court finds that plaintiff has alleged sufficient facts giving rise to a plausible claim for false arrest. And § 820.4 goes on to state that "[n]othing in this section exonerates a public employee from liability for false arrest or false imprisonment."

As discussed above, California Government Code § 821.6 "provides no immunity from liability for false arrest or false imprisonment." Id. at 1048. But the statute protects officers from liability for claims of malicious prosecution. Martinez v. City of Los Angeles, 141 F.3d 1373,

1379 (9th Cir. 1998) (citing Cal. Gov't Code § 821.6).

Based on the foregoing, the court concludes that the individual defendants are not immune from plaintiff's claim for intentional infliction of emotional distress insofar as that claim is based on the alleged false arrest. The individual defendants' motion to dismiss that claim is denied. However, the individual defendants are immune under California Government Code § 821.6 from plaintiff's claim for malicious abuse of process, and their motion to dismiss that claim is granted without leave to amend.

### 2. California Public Records Act (CPRA) (Cal. Gov't Code § 6250, et seq.)

Gawf claims that the County violated the CPRA by wrongfully denying access to public records and wrongfully claiming that requested records were exempt from disclosure. "The CPRA was modeled on the federal Freedom of Information Act (FOIA) (5 U.S.C. § 552 et seq.) and was enacted for the purpose of increasing freedom of information by giving members of the public access to information in the possession of public agencies." Filarsky v. Super. Ct., 121 Cal. Rptr.2d 844, 847 (Cal. 2002). "A state or local agency, upon receiving a request by any person for a copy of public records, generally must determine within 10 days whether the request seeks public records in the possession of the agency that are subject to disclosure." Id. at 426 (citing CPRA § 6253(c)). "If the agency determines that the requested records are not subject to disclosure, for example because the records fall within a statutory exemption (see § 6254), the agency promptly must notify the person making the request and provide the reasons for its determination." Id.

The TAC alleges that "County admitted through letters that they had no training on the California Public Records Act, attached as Exhibit 20. This caused them to wrongfully deny access of public records numerous times." (TAC ¶ 119). The referenced Exhibit 20 purports to be a September 7, 2011 letter from the County Board of Supervisors to one John Gawf, whom this court is told is plaintiff's father. The letter says that it pertains to his request for "records concerning the County's policy, procedure, and training programs for the Public Records Act." The letter goes on to state that the County has no such records, nor any "records responsive to your request regarding which department heads, or staff, are required to undertake formal training

12

regarding the Public Records Act." Suffice to say that the County cannot give access to records it does not have.

The TAC further alleges that "Defendant County's Board of Supervisors stated on September 7, 2011 that Plaintiff's requests were exempt under the Public Records Act per Government Code § 6254(b) and § 6254(k)." (TAC ¶ 120). The cited exemption statutes concern (1) records pertaining to pending litigation to which the public agency is a party and (2) records whose disclosure is prohibited by federal or state law, including state laws re privilege. Nothing in the September 7, 2011 letter appended to TAC mentions that any of the requested records were exempt from disclosure. Plaintiff's CPRA claim is dismissed without leave to amend.

### C. Fed. R. Civ. P. 12(e) Motion for More Definite Statement

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Generally, a more definite statement is required "only when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself."). Margarita Cellars v. Pacific Coast Packaging, Inc., 189 F.R.D. 575, 578 (N.D. Cal. 1999) (internal quotations and citations omitted). Many of defendants' stated concerns are addressed by the rulings in this order. And, while the TAC is not the model of clarity, the court does not find it so vague or ambiguous that defendants cannot reasonably prepare a response.

## ORDER

Based on the foregoing, defendants' Fed. R. Civ. P. 12(b)(6) is granted in part and denied in part:

- The motion to dismiss the Fourth Amendment claim for false arrest is denied.
- The Fourteenth Amendment (Due Process) claim is dismissed without leave to amend.
- The Fourteenth Amendment (Equal Protection) claim is dismissed without leave to amend.
- The motion to dismiss the failure to train claim is denied.

13

- The motion to dismiss the 42 U.S.C. § 1983 claim is denied.
- The conspiracy claim is dismissed without leave to amend.
- The motion to dismiss the claim for intentional infliction of emotional distress is denied.
- The claim for malicious abuse of process is dismissed without leave to amend.
- The CPRA claim is dismissed without leave to amend.

Defendants' alternate motion for a more definite statement under Fed. R. Civ. P. 12(e) is denied.

Defendants' responsive pleading shall be filed and served within 14 days from the date of this order.

A case management conference is set for **April 21, 2015, 1:30 p.m.** A joint case management statement must be filed no later than **April 14, 2015**.

To the extent he has not already done so, plaintiff is strongly encouraged to contact the Federal Legal Assistance Self-Help Center (FLASH) for assistance. FLASH is located on the Second Floor of the Federal Courthouse in San Jose. Appointments with FLASH may be made by signing up at the Center or by calling 408-998-5298, ext. 311. If he has not already done so, plaintiff is also directed to obtain a copy of the court's Handbook for Pro Se Litigants, available on the court's website (http://cand.uscourts.gov) or from the Clerk's Office.

SO ORDERED.

Dated: February 11, 2015

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

5:12-cv-00220-HRL Notice has been electronically mailed to:

Jon Allen Heaberlin    jheaberlin@rllss.com, cajlouny@rllss.com, tr@rllss.com

Michael C. Serverian    michael.serverian@cco.sccgov.org, tam.lobach@cco.sccgov.org

5:12-cv-00220-HRL Notice sent by U.S. Mail to:

David Gawf
307 Bishop Avenue
Pacific Grove, CA 93950-9998